Max B. CLARK et al., Appellants,

v.

LIQUOR CONTROL BOARD of Texas et al.,
Appellees.

No. 6529.

Court of Civil Appeals of Texas.

Beaumont.

March 1, 1962.

Frank M. Adams, Beaumont, for appellants.

Kenneth Hynes, Beaumont, for appellees.

McNEILL, Justice.

This is an appeal by appellants, Max B. Clark and Albert Eaves, from the judgment of the District Court upholding the refusal of the County Judge of Jefferson County to issue to them a license for the purpose of selling beer to be consumed off the premises, as provided for in the Texas Liquor Control Act, at a location known as the Cheek Drive In in a wet area. The location is in a small community known as Cheek on Highway 124 a few miles south of the city limits of Beaumont in Jefferson County. The County Judge's order refusing the license was upon two grounds: (1) that the Cheek Public Elementary School is closer than 300 feet to the proposed place of business; (2) that the issuance of such license "would be detrimental to the welfare, health, peace, temperance and safety of the school children in said area."

The burden is on appellants to prove that the order of the County Judge refusing their license was not supported by substantial evidence. Vrocher v. Texas Liquor Control Board, Tex.Civ.App., 350 S.W.2d 349. And in this case it was said: "It is the evidence introduced in the District Court, not that which was introduced before the County Judge or the Liquor Control Board, to which we must look in determining whether appellants failed to discharge their burden." Our duty is to ascertain from the record made in the District Court whether there is sufficient

evidence reasonably sufficient to support the challenged order. Jones v. Marsh, 148 Tex. 362, 224 S.W.2d 198. If the evidence does, we are required to affirm; if it does not, we are required to reverse and render the judgments of the County and District Courts.

■ Is the evidence sufficient to support the finding of the County Judge that the Cheek Drive In is within the prohibited distance of 300 feet? Testimony of one witness was to the effect that he had measured the distance from the front door of the Drive In to the nearest door of the school and it was 285 feet. However, this measurement was taken in a straight line "as the crow flies" from the Drive In door to the school door. We know of no authority for this measurement. The statute, Art. 666–25a, Vernon's Ann.P.C., provides "the measurements to be along the property lines of the street fronts and from front door to front door and in a direct line across intersections where they occur." See Stubbs v. Texas Liquor Control Board, Tex.Civ. App., 166 S.W.2d 178, for permissible measurements under the statute. The inspector of the Liquor Control Board testified that he measured the distance from the front door of the Drive In out to the property line, then followed the property line along the right of way of State Highway 124 to a point opposite the nearest school building door, which was the cafeteria door, and the distance was more than 400 feet. The appellants measured the distance this way and found it 416 feet. Under the circumstances delineated, we hold the County Judge's finding that the Cheek Drive In is within the 300 feet prohibited distance to the school is without substantial evidence to support it.

■ Is the evidence sufficient to support the finding of the County Judge that the granting of the permit would be detrimental to the welfare, health, peace, temperance and safety of the school children of the area as the question must be construed within the provisions of said Liquor Control Act? The immediate Cheek community consists of only a small number of homes, as many children attending the school ride the school busses.

Three witnesses testified to the effect that they had known appellants for two or more years, and that appellants had been operating a grocery business known as the Tyrrell Park Drive In, in a neighboring community for two years in which business they have had and now hold a permit to sell beer to be consumed off the premises; that these applicants were good law-abiding citizens and they conducted their business in a proper and lawful way, and that in the judgment of these witnesses a permit to sell beer to be consumed off the premises at the Cheek Drive In would not be detrimental to the community but would be an asset thereto. Appellant Eaves testified that both their Tyrrell Park Drive In and the Cheek Drive In are grocery stores; that beer sold and consumed off the premises is an integral but minor part of such a business; that a customer likes to get all his purchases at one place and if appellants are not allowed to sell beer for off-premises consumption they will lose considerable trade to other drive ins having permit to sell beer. Appellants are brothers-in-law. Appellant Clark and family, composed of his wife and two children, one of whom attends the Cheek school live in a new bungalow home just back of the Cheek Drive In.

The South Park Independent School District, of which the Cheek school is a part, opposed the granting of this license. The Superintendent of Schools, Mr. Joe J. Vincent, testified as a witness for the District. He is a well informed, able and experienced public school official. When asked whether he would give his opinion as to the effect, good or bad, that the sale of beer at the Cheek Drive In would have upon the school children at this school, he stated that he would have to recite the policy of public schools in general, that is, the policy of the American School System. He mentioned the fact that the schools in-

doctrinate the children in the love of the American flag and place Bibles in the different rooms of the schools; that these are symbols of the American way of life. In this case he stated there was no street between the school campus and this business. There is a map in the record which indicates that the Cheek Drive In is on a corner lot at the intersection of Highway 124 and Avenue A. The school faces Highway 124 more than the proscribed distance East of the Drive In. It appears that since this Drive In is on a corner close to the school campus, the school district felt obliged to contest the granting of the license. When asked on cross-examination whether it was the policy of the American School System to oppose the establishment of any business where intoxicants are sold near a school, Mr. Vincent's answer was: "A. No, to set forth their symbols. We are just as much opposed to the amount of television we have where the children have to see advertisements that we don't think are wholesome. Q. That would be advertisements of beer? A. That's right. Q. And as part of your policy, you would oppose that, too? A. Yes, sir, that's right." Parenthetically it should be mentioned that the Liquor Control Act allows only one sign with only the word "Beer", the letters of which may not be over 12 inches high, to be displayed where license of the kind now involved is granted. On further cross-examination Mr. Vincent testified: "Q. I take it that your objection as superintendent of schools is the same objection that you have to the advertisements on TV programs and the establishment of the shopping center that you had at Amelia, the same objection as that because it creates traffic and you don't like to have any type of business close to the school? A. That's right. I would object to a blacksmith shop being there, anything that causes people to * * *. Q. To come there other than for school purposes? A. That's right."

Witness for the School District, Rev. R. E. Sjolander, testified that he lived in the Tyrrell Park area, but that he and several neighbors had children going to the Cheek school. He was opposed to the issuance of this license and stated he was interested, both as a parent and as a minister, and that he was of the opinion there were enough liquor sales on the highway as it was and that the granting of this license would be detrimental not only to the community but to the Cheek public school. He further stated that it was his feeling that he would not want his children to be placed where they may see and observe things as result of the sale of beer, or to see people who might come to the store for the purpose of purchasing beer, because this would be a bad influence on the school children. He stated on cross-examination that he was opposed to the granting of the license for the reason that he considered there was something immoral about the purchase of beer; that it is an immoral transaction.

Does this testimony justify the refusal to issue the license sought? We think not. The question whether the sale and purchase of beer is an immoral act, as presented in this case, is a political one decided by the voters under the Local Option sections of the Liquor Control Act. This Act provides if the sale of beer is permitted within an area that, upon the adoption of the provision of Art. 666–25a, by the Commissioners' Court, or governing body of the city involved, no such sale may be conducted within 300 feet of a public school as defined in that Act. The Legislature has thus established the proscribed distance, and it is not within the province of the court to substitute its judgment therefor.

The sufficiency of appellants' application is not questioned; nor the qualifications of appellants, nor the adequacy of the building involved. The proper department of the Liquor Control Board has approved the application. No unusual condition within the meaning of the Act is shown; therefore the license should have been granted. Killingsworth v. Broyles, Tex.Civ.App., 300

S.W.2d 164; Morton v. Plummer, Tex.Civ. App., 334 S.W.2d 322. To deny the license in this instance is to discriminate between appellants and their competitors. Morton v. Plummer, supra; Smith v. Cove Area Citizens Committee, Tex.Civ.App., 345 S.W.2d 850.

The judgment of the District Court is reversed and it is directed that the license to appellants be issued.