Larry Ronald LONES, Appellant,

v.

BLOUNT COUNTY BEER BOARD,
Appellee.

Supreme Court of Tennessee.

June 1, 1976.

Perry P. Paine, Jr., Felknor, Paine, DeLozier & Cunningham, Maryville, for appellant.

David T. Black, Kizer & Black, Maryville, for appellee.

## OPINION

HENRY, Justice.

This is an appeal from a judgment of the Law and Equity Court of Blount County denying appellant's application for a permit to engage in the retail sale of beer.

### I.

The Blount County Beer Board declined to grant a permit for the sale of beer at an establishment known as Gateway Restaurant. Pursuant to that denial the applicant, Larry Ronald Lones, filed his petition for the writ of certiorari. The evidence adduced before the Beer Board is not contained in the record; however, this is of no consequence since the matter was heard *de novo* and, therefore, was tried as if it originated in the Law and Equity Court.

At the conclusion of the hearing, the trial judge ordered the issuance of a "license" (presumably he meant permit), subject to conditions and restrictions against sales to intoxicated persons, and permitting intoxicated persons to enter upon the premises. The permit was subject to automatic revocation if any breach of the peace should occur within the first twelve (12) months. To enforce these and other restrictions the court retained the matter on the docket "at least for one year".

The Court's opinion was not formalized by decree. A few days following its pronouncement, the applicant's counsel filed a written motion to review and correct the judgment upon the ground that it was beyond the power and authority of the Court to impose restrictions and conditions upon the granting of a permit. This motion was obviously founded upon the rationale of *Flowers v. Benton County Beer Board*, 202 Tenn. 56, 302 S.W.2d 335 (1957), wherein it is held that a county beer board in granting or revoking permits for the sale of beer, may not impose any non-statutory restrictions.

The Beer Board moved the Court to review the judgment for the assigned reason that it "has an absolute discretion as to whom licenses and permits are issued."

The Court, by memorandum opinion, conceded that it could not impose the restrictions and conditions upon the holders of beer permits.

In the same memorandum opinion, the Court sustained the motion of the beer board holding as follows:

The Court is further of the opinion that under the authorities presented, namely *State v. Pollard*, 22 S.W.2d 74 [189 Tenn. 86, 222 S.W.2d 374] and *Young v. Warren*

*County Beer Board,* 195 Tenn. 211 [258 S.W.2d 763], that the beer board or county licensing authority has the right to refuse a beer permit even when the applicant has met the requirements of the law. This Court, therefore, is not going to substitute its judgment for that of the Beer Board unless it appears, by a preponderance of the evidence, that the Beer Board has acted arbitrarily or capriciously in its denial of a permit to sell beer. The applicant, in this instance, has failed to carry the burden of proof that the Beer Board acted arbitrarily or capriciously and therefore, this Court will not disturb the Beer Board's decision in this instance. . . .

Three days after the filing of this memorandum opinion Lones moved for reconsideration, pointing out that the 1961 amendment to § 57–209, T.C.A. requires a trial *de novo,* and that under that amendment "the cause is to be tried as if it had originated in such Court and the Trial Judge is required to make an independent judgment of the merits *substituting* his judgment for that of the beer board". Citing, *Cantrell v. DeKalb County Beer Board,* 213 Tenn. 568, 376 S.W.2d 480 (1964).

Apropos the trial court's finding that a county beer board has the right to refuse a beer permit even when the applicant has met the requirements of the law, counsel for the applicant again cited *Cantrell, supra,* and particularly the following provision:

An applicant seeking a license or permit to sell beer in a county is required to establish, by proof, his application complies with certain conditions and provisions set out in Section 57–205, T.C.A. This statute now requires, if the conditions and provisions therein be met, a license or permit "shall" be issued: which leaves the judgment to be made on the issue of whether or not an applicant, under the proof, has met all the said conditions and provisions. 213 Tenn. at 572–73, 376 S.W.2d at 482.

The Beer Board answered, taking issue with the applicant's position and, in addi-

tion, filed a written motion asking the Court to consider newly discovered evidence consisting of a restriction in the chain of title to the property applicant proposed to lease, prohibiting the sale of intoxicating beverages upon the premises.

Pursuant to these pleadings the trial judge handed down another opinion, recognizing the legal infirmities in his prior opinion and finding the facts as follows:

The establishment in question has, in the past, been the scene of many altercations and breaches of the peace. That while the complainant worked in this establishment, there was similar trouble there. That there seems to be a concentration of beer taverns and package stores along Highway 73 in the vicinity of this establishment in question. That the lessee of this place of business surrendered his license because of one or more serious incidents (the complainant worked for the former operator as a bartender). That due to the past history of serious trouble occurring at this place of business, both before and while the complainant worked there, and further, due to a concentration of taverns and package stores on Highway 73, and for the further reason that there are restrictive covenants in the deed, from which the present owner obtained title to the property, prohibiting the sale of alcoholic beverages, this Court hereby denies complainant a license to sell beer on the premises in question.

As a result of this finding and the assignments made in this Court, this controversy distills down to three basic issues, viz.

1. Does the reputation or character of the place, premises or physical facilities which an applicant proposes to use in connection with the retail sale of beer have any bearing upon his entitlement to a permit?

2. Does the fact that there is a concentration of retail beer outlets in the vicinity of the proposed location have any bearing?

3. Does the fact that there are restrictive covenants prohibiting the sale of

beer on the proposed location have any bearing?

## II.

■ We point out that appeals to this Court in cases involving beer permits are accompanied by a presumption of the correctness of the trial court, unless the evidence preponderates against it, and such judgment may be overturned only by a preponderance of the evidence. *Adams v. Monroe Co. Qtry. Ct.,* 214 Tenn. 270, 379 S.W.2d 769 (1964). We have reviewed the record under this standard.

■ In the recent case of *Howard v. Willocks,* 525 S.W.2d 132 (Tenn.1975), we pointed out that under the 1961 amendment to § 57–205, T.C.A. "the Legislature mandated that an applicant for a beer permit, who complies with all the legal requirements, shall be entitled to have such license or permit issued to him," and that:

[t]his amendment operates to leave the only issue in cases involving the denial of a beer permit as being "whether or not an applicant, under the proof, has met all the said conditions and provisions". 525 S.W.2d at 136.

There are five basic requirements of § 57–205, T.C.A. The third of these reads as follows:

[T]hat no such beverages will be sold except at *places* where such sale will not cause congestion of traffic or interference with schools, churches, or other *places* of public gathering, or *otherwise interfere with public health, safety and morals;* the county court having the right to forbid such storage, sale or manufacture at *places* within two thousand (2,000) feet of such *places* of public gathering in its discretion. (Emphasis supplied).

The Beer Board insists before this Court that the issuance of a permit at this particular location will interfere with public health, safety and morals; otherwise, there is no insistence of any violation of, or failure to qualify under, this or any other portion of § 57–205, T.C.A.

It should be noted at the very outset that this applicant stands in this record as a thirty-one year old citizen of good moral character. There is not the slightest insistence to the contrary and there is affirmative proof to that effect. It should further be noted that the Gateway Restaurant has not enjoyed an unblemished reputation and the record shows that it has been the scene of various acts of lawless conduct, particularly during January and the early part of February of 1975.

The applicant was an employee of the owner of Gateway Restaurant either from "January 1975 to date" according to the application which was dated 5 February 1975, or from 3 February 1975 to 13 February 1975. The record will support either of the two periods. Taking the period to be the entire month of January through February 13, 1975, the applicant was employed there a maximum total of forty-four days. However, the majority of the proof would indicate a lesser period. Irrespective of the period of his employment, there is not a scintilla of proof to indicate that he was anything but a mere employee. There is no proof from which it could be inferred that he occupied any managerial capacity or was in any way or manner, responsible for the operation of the establishment. There is proof, as aforesaid, of acts of lawless conduct—primarily involving intoxication and drunken driving—although this proof is sparse and sketchy. None of the testifying witnesses places him at the scene at the time of any of these occurrences.

■ Assuming, arguendo, that this place established a bad reputation in a period of some six weeks, we find nothing in the record to associate the applicant with that reputation. We find it difficult to charge a building, which incidentally was vacant at the time of the trial, with having a bad reputation or to fault a physical facility for the conduct or misconduct of prior owners and operators. Persons may have bad reputations and may give a building that imprinter, but a building *per se* cannot have a reputation existing over, beyond and

apart from those having it in custody and under occupancy.

We, therefore, hold that the evidence preponderates against the finding of the trial court with respect to the reputation, character or activities in and around the building being any impediment to the issuance of a permit.

■ We find the insistence that the permit should not have issued because of a concentration of beer taverns and package stores in the vicinity to be equally without merit. There is not the slightest suggestion that this particular outlet will cause congestion of traffic or create any other condition not already in existence. We think it significant that the trial judge, in his initial opinion, rendered immediately following the close of the hearing, did not impose any condition or restriction relating to traffic congestion or attributable in any sense to the proximity of any other retail beer establishments. We find nothing in the statutory criteria which would make the existence of other outlets a controlling or even a permissible consideration, and most assuredly, there is nothing in the evidence which would warrant such a conclusion. In *Ewin v. Richardson,* 217 Tenn. 534, 399 S.W.2d 318 (1966), the Court made this apt observation:

> The courts are without authority to determine if the sale of beer, in general, is harmful or immoral. This is a matter for the General Assembly. The courts do have authority to determine, *from evidence in the record,* if a particular permit would interfere with public health, safety and morals. (Emphasis supplied). 217 Tenn. at 539–40, 399 S.W.2d at 320.

We find no evidence in this record indicating that this particular permit would interfere with public health, safety and morals, nor do we find any evidence of record indicating any injurious consequences that would flow from the issuance of this beer permit in a locality where other outlets are located and in a building which has for many years been used as a beer establishment. If the beer permittee does not abide the law, § 57–209, T.C.A. provides an ample remedy.

■ We are not impressed with the insistence made with respect to the restrictions in the chain of title to the property constituting the proposed location. Title deficiencies are not a legitimate concern of local beer boards. If this applicant is willing to lease premises knowing that there is a restrictive covenant precluding the sale of alcoholic beverages, then this is a matter that addresses itself solely to his judgment and discretion and as to which the Beer Board has no concern.

■ The matter of these restrictions was not considered by the beer board nor was it considered by the Court of Law and Equity on the main trial, but was raised by motion after the hearing had been concluded. It is fundamental to our law "that a party cannot raise a new issue, or present a new line of proof, on motion for a new trial that was not within the scope of the pleadings and was not presented to the court at the trial of the case." *Serv–U–Mart, Inc. v. Sullivan County,* 527 S.W.2d 121, 124 (Tenn. 1975).

The judgment of the trial court is reversed and this cause is remanded to the Law and Equity Court of Blount County for the entry of an order directing the Blount County Beer Board to issue forthwith a permit to Larry Ronald Lones, authorizing and permitting the sale of beer in accordance with his application.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.