IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 07, 2015 Session


# DONNIE G. GOODWIN, ET AL. v. JIM BALE CONSTRUCTION, LLC

**Appeal from the Circuit Court for Sumner County**
**No. 2011CV506      Jane W. Wheatcraft, Judge**

————————————

**No. M2014-00919-COA-R3-CV – Filed June 18, 2015**

————————————

This appeal arises from a construction dispute. Appellants/Homeowners brought suit against Appellee/Builder. Appellants claim that Appellee built their home on uncontrolled fill material, which caused excessive cracking in the garage and the driveway. Appellee contends that Appellants' home was built on virgin soil, rather than fill material as alleged by Appellants. Both sides proffered expert testimony to prove the cause of the cracks. The trial court found Appellee's expert credible and concluded that the home was built on virgin soil. Because the evidence does not preponderate against the trial court's finding on this issue, we affirm this finding. However, we vacate the trial court's award of discretionary costs to Appellees in the amount of $9,210.60 and remand for reconsideration in light of our opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Affirmed in Part, Vacated in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Kirk L. Clements, Goodlettsville, Tennessee, for the Appellants, Donnie G. Goodwin and Julie Goodwin.

Ronald B. Buchanan, Hendersonville, Tennessee, for the Appellee, Jim Bale Construction, LLC.

# OPINION

## I. Background

Jim Bale Construction, LLC ("Bale" or "Appellee") constructed homes on three lots in Goodlettsville, Tennessee. On April 30, 2008, Donnie Goodwin purchased one of the homes, which is located at 1015 Emily Drive (the "Home"). Mr. Goodwin paid $321,000 for the Home and later added his wife, Julie Goodwin (together with Mr. Goodwin, "Appellants"), to the deed for the Home.[1]

The instant lawsuit arose after the Appellants discovered that the Home's concrete driveway, porch, and garage floor were cracking. Appellants' neighbor, Dr. Ruth Haley, informed Appellants that she witnessed the construction of the Home and watched "truckloads of fill brought into the property." The Appellants subsequently hired Christopher Beaver, an expert geotechnical engineer, to investigate the cause of the cracking.[2] Mr. Beaver opined that "the house was built on uncontrolled fill and the instability of the soil, particularly on the southeast side of the home is the reason for the excessive cracking of the concrete in the garage and driveway." Relying on their neighbor's statement and Mr. Beaver's opinion, the Appellants filed suit against Bale in the General Sessions Court for Sumner County, alleging breach of contract, breach of warranty, and intentional and reckless misrepresentation. On March 4, 2011, the case was transferred from General Sessions Court to Circuit Court. On March 22, 2012, the trial court granted Appellants' motion to amend their complaint. Appellants filed their amended complaint the same day, alleging breach of contract, breach of warranty, and intentional and reckless misrepresentation.

The trial court held a bench trial on March 17th, 21st, and April 15th, 2014. On April 17, 2014, the trial court entered judgment in favor of Bale, finding that the Appellants had not "carried the burden" of proving any of their claims. Specifically, the trial court found that, given the "strong proof in the record," the Home was, in fact, built on virgin soil. The trial court also found that the Home "passed codes at every level of construction and was built to the standard of the construction industry…." On May 8, 2014, Bale filed a motion for discretionary costs in the amount of $9,210.60. On June 4, 2014, the trial court granted the motion over Appellants' objection.

---

[1] Before trial, Bale made an oral motion to dismiss Mrs. Goodwin from the lawsuit. On May 2, 2014, the trial court granted the motion. Appellants have appealed Mrs. Goodwin's dismissal from the lawsuit. Because we conclude that the trial court correctly found that Bale was not liable for any breach of contract or warranty, and was not guilty of misrepresentation, the issue of Mrs. Goodwin's dismissal from the case is pretermitted.

[2] The Trial Court's Order referred to Appellants' expert as "Chris Brewer," however, the record establishes that the Appellants' expert was Chris Beaver.

2

## II. Issues

Appellants raise several issues for review. However, we perceive that there are two dispositive issues, which we state as follows:

1. Whether the trial court erred in finding that the Home was constructed on virgin soil.

2. Whether the trial court erred in awarding Bale discretionary costs in the amount of $9,210.60.

## III. Standard of Review

This case was tried without a jury. Accordingly, we review the findings of fact made by the trial court *de novo*, with a presumption of correctness unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008). Furthermore, "[w]hen credibility and weight to be given testimony are at issue, considerable deference must be afforded the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony." *Mitchell v. Fayetteville Pub. Utils*., 368 S.W.3d 442, 447 (Tenn. 2012).

## IV. Analysis

### A. Preponderance of Evidence

As discussed above, Appellants contend that the cracks in parts of the Home resulted from Bale's failure to build the Home on stable, virgin soil as required by the applicable codes and standards of the construction industry. Appellants further argue that Mr. Beaver provided both reliable, unrefuted expert testimony, and physical evidence to support his finding that fill material was used in the foundation of the Home. Consequently, based upon Mr. Beaver's testimony and the physical evidence presented at trial, Appellants argue that the preponderance of the evidence is against the trial court's finding that the Home was built on virgin soil.

The Appellants essentially argue that the trial court should have relied on their experts' testimony instead of the Appellee's expert's testimony. "'Expert opinions are not ordinarily conclusive in the sense that they must be accepted as true on the subject of their

testimony, but are generally regarded as purely advisory in character….'" *Cocke County Bd. of Highway Com'rs v. Newport Utilities Bd.*, 690 S.W.2d 231, 235 (Tenn. 1985) (quoting 31 AM.JUR.2D *Expert and Opinion Evidence* § 138 (1967)). "[T]he trier of fact is not bound to accept an expert witness's testimony as true, and it may reject any expert testimony that it finds to be inconsistent with the credited evidence or is otherwise unreasonable." *Roach v. Dixie Gas Co.*, 371 S.W.3d 127, 150 (Tenn. Ct. App. 2011). "In cases where opposing expert evidence is offered, and in cases where there is no opposing expert evidence, the trier of fact 'is still bound to decide the issue upon its fair judgment, assisted by the expert testimony.'" *State ex rel. Summers v. Whetsell*, No. E2005-01426-COA-R3-CV, 2006 WL 1408403, at *2, (Tenn. Ct. App. May 22, 2006) (quoting *Gibson v. Ferguson*, 562 S.W.2d 188, 190 (Tenn. 1976)). "'Moreover it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation.'" *Id.* (quoting *Hinson v. Wal-Mart Stores, Inc.*, 654 S.W.2d 675, 676-77 (Tenn. 1983)).

Although the Appellants argue that Mr. Beaver's testimony was reliable and unrefuted, we note that the trial court specifically found that "from strong proof in the record," the expert opinions expressed by Mr. Beaver were "not supported by the record as a whole." The trial court further found that Mr. Beaver's sample test results were "suspect" because "all but one were outside the footprint of the house," and "several were taken from cores that had been previously dug and were therefore unreliable." We reiterate this Court's long-established rule that "the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify," *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. Ct. App. 1996), and "we give great weight to the trial judge's findings on the issues involving credibility of witnesses." *Id.* Because the trial court found Mr. Beaver's expert testimony to be "suspect," and accepted the expert testimony of Appellee's expert over that of Mr. Beaver, the proof in this case does not preponderate against the trial court's finding concerning Bale's alleged use of fill material.

The Appellants' only other witness at trial was Dr. Ruth Haley, who, as noted above, testified that she watched "truckloads" of fill being brought onto the Appellants' property. However, at trial, Dr. Haley stated that she had never performed any measurements of the Appellants' Home, and that she was uncertain where the Home was constructed in relation to where the fill was placed on the property. Importantly, and as we discuss further *infra*, the use of fill per se does not constitute negligence on Bale's part. Instead, the issue here is whether Bale used fill in the Home's foundation. Dr. Haley's testimony does not identify where the fill was placed on the lot, and, as such, her testimony is not helpful on the dispositive question of whether fill was used in the Home's foundation.

Appellants contend that the testimony of Bale's witnesses is unreliable and biased.

4

However, the trial court made no such finding. Daniel Terranova, a geotechnical engineer, who testified for Bale, opined that the footings of the Home were all in natural soil, not fill. Mr. Terranova testified that after he performed core samplings in the Appellants' garage, he returned the materials to the holes from which they came. In response to how test results can show fill and not natural material, Mr. Terranova testified that when virgin soil is taken from a hole and later replaced, the compaction test will be similar to that of fill material. The record indicates that Mr. Terranova performed his core samplings before Mr. Beaver performed compaction tests in the same area. Bale's expert, Robert Warren, a structural engineer, testified that cracks in concrete are "typical" and that "the curing of the concrete caused the cracks not shrink/swell properties of the soil."

Appellants also contend that Bale failed to construct the Home according to applicable codes and standards of the construction industry. Larry DiOrio, the Goodlettsville Code Inspector, testified that the Home passed all inspections during construction and that, at the time of construction, the City of Goodlettsville had no codes that prohibited the use of fill material in the construction of a driveway, or any area other than the Home's footprint. Brad Teples, the footing subcontractor, testified that there was no fill material, nor soft spots "at all" in the Home, and that there was nothing unusual about the Home's footings.[3] Mr. Teples also testified that the footings installed in the Home exceeded the City's building code requirements. According to Mr. Teples, the code requires 18-inch wide footings and 6 inches of concrete; Bale installed footings 24 inches wide with two steel rebars and 10 inches of concrete.

The trial court found that "the proof showed that this home passed code at every level of construction and was built to the standard of the construction industry in this area." From our review of the record, there is no evidence to support Appellants' contentions that the Home was built either on fill or was built in violation of the building codes of the City of Goodlettsville. Accordingly, we conclude that the evidence does not preponderate against the trial court's finding that Bale did not breach any contract, warranty, industry standard, or code in building the Home.

### B. Discretionary Costs

Appellants next argue that the trial court abused its discretion in awarding discretionary costs for all the fees charged by Bale's expert witnesses. Specifically, Appellants argue that the trial court awarded fees relating to preparation for trial, travel time and travel expenses in contravention of Tennessee Rule of Civil Procedure 54.04(2).[4]

---

[3] The Trial Court's Order referred to Appellee's expert as "Brad Teeples," however, the record establishes that the Appellee's expert was Brad Teples.

[4] Tenn. R. Civ. P. 54.04(2) provides, in relevant part:

Appellants argue that this award constitutes an abuse of discretion. We agree.

"Tenn. R. Civ. P. 54.04(2) empowers the trial courts to award the prevailing party certain litigation expenses." *Owens v. Owens*, 241 S.W.3d 478, 496 (Tenn. Ct. App. 2007). "Awards of discretionary costs are, naturally, decisions that lie within the sound discretion of the trial court." *Id*. "The party who takes issue on appeal with a trial court's decision regarding discretionary costs has the burden of showing how the trial court abused its discretion." *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 36 (Tenn. Ct. App. 2002). "An abuse of discretion occurs when the court either applies an incorrect legal standard or reaches a clearly unreasonable decision, thereby causing an injustice to the aggrieved party." *Woodlawn Memorial Park, Inc. v. Keith*, 70 S.W.3d 691, 698 (Tenn. 2002). "[T]ravel expenses are not allowable discretionary costs." Tenn. R. Civ. P. 54.04(2). This Court has also held that trial preparation expenses are not contemplated in Rule 54.04(2). *See* **Trundle v. Park**, 210 S.W.3d 575 (Tenn. Ct. App. 2006).

Here, the itemized fee statement provides:[5]

1. Trine Mitchell, court reporter - $812.75
2. Beaver Engineering, deposition fee- $782.40
3. Julie Richetto, court reporter- $810.00
4. Costs to file subpoena-   $6.00
5. Costs to file subpoena- $12.00
6. Elite Reporting Services- $187.50
7. Warren Engineering, Expert Witness- $5,973.75
8. Terra-Nova Engineering, Expert Witness- $1,050.00
9. Elite Reporting Services- $295.20
10. Elite Reporting Services- $93.75

Further, an invoice statement in item 7 shows that Warren Engineering, Mr. Beaver's engineering firm, charged: (1) $116.25 for "Review [of] Bale Complaint"; (2) $465.00 for "Site Visit (including travel)"; (3) $426.25 for "Review [of] Terranova report and EMC"; (4) $1,046.25 for its "Research, review, and report preparation"; and (5)

---

Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees not paid pursuant to Tennessee Supreme Court Rule 42, and guardian ad litem fees; travel expenses are not allowable discretionary costs.

[5] The itemized statement and invoice statements were made part of the trial court record.

$232.50 for "Review [of] Beaver Report." The invoice statement also shows that Warren Engineering charged for Mr. Beaver's "court appearance (including travel)" on March 17th and March 21st, 2014.

In item 8 of the invoice statement, Terranova Engineering charged $300.00 for its "Office meeting with Mr. Ron Buchanan," and $150.00 for "File Review (Photographs)." Clearly, certain portions of the requested discretionary fees include charges for travel expenses, travel time and trial preparation. Therefore, the trial court's grant of Bale's motion for discretionary costs, insofar as it reimburses Bale for travel expenses, travel time, and trial preparation, is in direct contravention of Rule 54.04(2). Accordingly, we conclude that the trial court erred in awarding discretionary costs in the full amount requested, i.e., $9,210.60. We vacate the award of discretionary costs and remand for entry of judgment in favor of Bale for only those portions of its costs that are allowable under Rule 54.04(2).

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court concerning Bale's liability. We vacate the award of $9,210.60 in discretionary costs. The case is remanded for such further proceedings as may be necessary and are consistent with the opinion, including, but not limited to, recalculation of discretionary costs. Costs of the appeal are assessed to the Appellants, Donnie Goodwin and Julie Goodwin and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE