IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 2, 2021

### RALPH JUNIOR LOWE V. ROY PROVINCE ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 198108-2     Clarence E. Pridemore, Jr., Chancellor**

_____

### No. E2020-01133-COA-R3-CV

_____

This appeal concerns the administration of a husband and wife's intestate estates, consisting of several tracts of real property that the husband and wife owned as tenants by the entirety. They were both found deceased in their home several days after they had died. The wife's heir at law, her brother, filed a petition seeking a declaration that the husband died first, that the wife, as the survivor, owned the real property at her death, and it passed to her heir at law. The husband's heirs at law responded to the petition, contending the evidence was not sufficient to prove that the couple died in any order other than simultaneously. The only witness at the trial was the medical examiner who conducted the autopsies. He testified that it was more probable than not that the husband died first based on the causes of death and medical histories of the spouses. After considering the expert witness testimony, the trial court concluded that the evidence was not sufficient to prove that the husband and wife died otherwise than simultaneously. This appeal followed. Having determined that the trial court was not bound by the medical examiner's speculative opinion as to who died first, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Felisha B. White, Seymour, Tennessee, for the appellant, Ralph Junior Lowe.

R. Seth Oakes, Knoxville, Tennessee, for the appellees, Wanda Forrester and Mary Emory.

### OPINION

Charles and Shirley Province lived at 8616 Walnut Springs Road in Knoxville, Tennessee. A neighbor decided to pay them a visit on April 5, 2018, and became concerned when they did not come to the door. After entering the Province's home through an

unlocked window, the neighbor found them deceased and called 911. Police officers called to the scene deemed the deaths suspicious and dispatched the Knox County Regional Forensic Center to investigate.

According to the Forensic Center's report, investigators arrived at the home and found it "in extreme disarray with clothing, food, and papers strewn about and a distinct malodorous scent." Mr. Province's body "was located in the kitchen partially underneath a counter," and Mrs. Province's body was located "in the corner of the living room next to a couch and partially blocking the hallway to the kitchen." The investigators spoke with a neighbor who reported that he last saw the couple alive on the morning of March 31.

Mr. and Mrs. Province were 81 and 79 years old, respectively. The medical examiner for Knox County, Dr. William Oliver, conducted autopsies and determined that Mr. Province died from hypertensive and atherosclerotic heart disease, which Dr. Oliver deemed a natural and sudden death. However, he determined that Mrs. Province, who suffered from dementia, died accidentally from diabetic ketoacidosis—a result of her failure to properly monitor and treat her diabetes. Specifically, Dr. Oliver surmised that Mrs. Province's "combination of diabetes mellitus and dementia would be rapidly life-threatening if [her] husband succumbed first, since [she] may not have been competent to monitor her hyperglycemia."

Both Mr. and Mrs. Province died intestate. In May 2018, Mr. Province's brother, Roy Province, was appointed the administrator of his estate, and Mrs. Province's brother, Ralph Junior Lowe, was appointed the administrator of hers. Prior to their deaths, the Provinces jointly owned three properties in Knoxville, Tennessee as tenants by the entirety—8616 Walnut Springs Road, 8614 Walnut Springs Road, and 0 Bays Mountain—and one property located on Cree Drive in Cumberland County, Tennessee.

On May 24, 2019, Mr. Lowe filed a Petition for Declaratory Judgment or in the Alternative for Partition, seeking a declaration that Mr. Province predeceased Mrs. Province; consequently, Mrs. Province owned the subject property at her death, and the property passed to Mr. Lowe in accordance with intestate succession law. Mr. Province's heirs at law, Wanda Forrester and Mary Emory, filed a response to the Petition, contending the evidence was not sufficient to prove that Mr. and Mrs. Province died in any order other than simultaneously.[1]

On July 15, 2020, the court held a trial on the matter, at which the forensic and autopsy reports for Mr. and Mrs. Province were entered into evidence along with the deposition testimony of the medical examiner, Dr. Oliver, which was the only testimony admitted at the trial.

---

[1] Debra Douglas, one of Mr. Province's heirs at law, also responded to the Petition shortly after it was filed, but she was not present at the trial on the matter and is not a party to this appeal.

At his deposition, Dr. Oliver testified that, in his opinion, it was more probable than not that Mr. Province predeceased Mrs. Province based on their causes of death and medical histories. He explained his reasoning as follows:

> [I]t is essentially an Occam's razor kind of thing.[2] The idea is this: Mr. Province died almost certainly of a sudden cardiac death, which by its nature is a sudden death. Mrs. Province, on the other hand, died of diabetic ketoacidosis, which is a process that has a process. It's not a sudden death. Thus, the simplest explanation is that Mr. Province died. Mrs. Province, who—there is evidence that she had cognitive issues as well as diabetes mellitus—most likely did not have the wherewithal to adequately treat her diabetes and subsequently became ketotic and died. And that basically is the simplest explanation for what was found. Otherwise, you would have to posit that Mrs. Province died and Mr. Province basically stepped around the body for a while and then died, which to me, while not impossible, seems somewhat less likely.

That said, Dr. Oliver explained that he could not know for certain who died first because it was difficult to estimate the time of death based on the condition of the bodies:

> Morphologic criteria are criteria that we see on the body, like the stiffening of the body, the cooling of the body, the livor, which is the settling of blood in the body. They're all extraordinarily variable. So we can use that for basic consistency stuff. So if somebody has been dead for a year and we find the body is in pretty good shape, they didn't die a year ago. . . . But other than that, it's not particularly useful. In particular, it's not useful for cases like this . . . did this one die 30 minutes before that one? And the answer is you can't tell from the body.

After reviewing the foregoing testimony and exhibits presented at the trial, the court concluded that the evidence was not sufficient "to make any other determination than that Mr. and Mrs. Province died simultaneously." Thus, in accordance with Tenn. Code Ann. § 31-3-104, one-half of the subject property would be distributed as if Mr. Province had survived and one-half as if Mrs. Province had survived.

---

[2] "Occam's razor" is a principle attributed to the 14th century philosopher and theologian William of Ockham. Brian Duignan, *Occam's Razor*, Encyclopedia Britannica, https://www.britannica.com/topic/Occams-razor (last visited Sept. 28, 2021). It is "a scientific and philosophical rule that entities should not be multiplied unnecessarily[,] which is interpreted as requiring that the simplest of competing theories be preferred to the more complex or that explanations of unknown phenomena be sought first in terms of known quantities." *Occam's razor*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/Occam%27s%20razor (last visited Sept. 28, 2021).

This appeal followed.

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, "appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) (citations omitted). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

Considering Dr. Oliver's expert testimony that it was more probable than not that Mr. Province died first, Mr. Lowe argues that the evidence was sufficient to prove that Mr. Province predeceased Mrs. Province.

The applicable statute, Tenn. Code Ann. § 31-3-104, provides:

Where there is no sufficient evidence that two (2) joint tenants or tenants by the entirety have died otherwise than simultaneously, the property so held shall be distributed one-half ( ½ ) as if one had survived and one-half ( ½ ) as if the other had survived. . . .

"In the context of a civil case, 'sufficient' means preponderance of the evidence," *Moon v. Fox*, No. 03A01-9507-CV-00213, 1996 WL 36139, at *3 (Tenn. Ct. App. Jan. 31, 1996), which "requires that the truth of the facts asserted be more probable than not," *Teter v. Republic Parking System, Inc.*, 181 S.W.3d 330, 341 (Tenn. 2005).

This court explained the effect of expert witness testimony as follows:

**Expert opinions . . . are not ordinarily conclusive in the sense that they must be accepted as true on the subject of their testimony,** but are purely advisory in character and the trier of facts may place whatever weight it chooses upon such testimony and may reject it, if it finds that it is inconsistent

- 4 -

with the facts in the case or otherwise unreasonable. **Even in those instances in which no opposing expert evidence is offered, the trier of facts is still bound to decide the issue upon its own fair judgment, assisted by the expert testimony . . . . this is especially true when the opinion . . . amounts to no more than prediction or speculation.**

*Dickey v. McCord*, 63 S.W.3d 714, 720 (Tenn. Ct. App. 2001) (quoting *Gibson v. Ferguson*, 562 S.W.2d 188, 189–90 (Tenn. 1976)) (emphasis added).

In his testimony, Dr. Oliver noted that Mrs. Province had a diagnosis of dementia and likely did not have the mental capacity to adequately monitor and treat her diabetes. Thus, Dr. Oliver speculated that Mr. Province died suddenly, and then, without Mr. Province to care for her, over time, Mrs. Province succumbed to diabetic ketoacidosis. Dr. Oliver testified that if one were to posit that Mrs. Province died first, one would also "have to posit that . . . Mr. Province basically stepped around the body for a while and then died, which . . . while not impossible, seems somewhat less likely." But Dr. Oliver's opinion assumed that Mr. Province was mentally competent (*i.e.*, that Mr. Province adequately monitored and treated Mrs. Province's diabetes, and that he would not step around her body after she died) without any evidence of Mr. Province's mental state at the time of his death. Thus, Dr. Oliver's opinion that Mr. Province died first was speculative and premised on a key fact that was not in evidence.

In short, the trial court concluded that it could not determine who died first based solely on the parties' causes of death and their medical histories. As previously stated, the trial court, as the trier of fact, was not bound by Dr. Oliver's opinion as to the ultimate issue to be decided. *Dickey*, 63 S.W.3d at 720. Rather, the trial court was free to reach its own conclusion based on the evidence it had before it.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Ralph Junior Lowe.

_____
FRANK G. CLEMENT JR., P.J., M.S.